UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-288-FL

| | | |
|---|---|---|
| MARY ANN COLLINS and CATHLEEN BRYANT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| | ) | |
| FIRST FINANCIAL SERVICES, INC.; GATEWAY FUNDING DIVERSIFIED MORTGAGE SERVICES, L.P.; GEORGIA BANKING COMPANY; PHH MORTGAGE; KYLE DILLON SMITH; JENNIFER SANFORD PUGLIESE; SHAWN MARIE CARNI; SANDRA S. FADEL; ELIZABETH WEBSTER; JULIE PATEL; FREDDIE MAC; DONALD N. LANDGRAFF, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter is before the court on motions to dismiss filed by defendants Georgia Banking

Company ("GBC") (DE 67), PHH Mortgage Corporation ("PHH") (DE 73), Federal Home Loan

Mortgage Corporation ("Freddie Mac") (DE 76), and Gateway Funding Diversified Mortgage

Services, L.P., ("Gateway") (DE 80). Also before the court is that portion of the motion to dismiss

in part filed by defendants First Financial Services, Inc. ("FFSI"), Shawn Marie Carni, Sandra S.

Fadel, Donald N. Landgraff, Jennifer Sanford Pugliese, Kyle Dillon Smith, and Elizabeth Webster

(collectively, the "FFSI defendants") (DE 121). These motions have been fully briefed and are ripe for ruling.[1]

## STATEMENT OF THE CASE

Plaintiffs, proceeding pro se, filed an original complaint in this action on December 12, 2014, a first amended complaint on February 13, 2015, and second amended complaint with leave of court on April 8, 2015, asserting claims arising out of an alleged mortgage lending scheme involving defendants, related to plaintiff Collins's purchase of a home.

Plaintiff Collins asserts federal statutory claims under the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2605, 2607; and the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq. Plaintiff Collins also asserts state statutory claims under the North Carolina Good Funds Settlement Act, N.C. Gen. Stat. Chapter 45A; the North Carolina Uniform Commercial Code, N.C. Gen. Stat. Chapter 25 Article 3; the North Carolina Mortgage Debt Collection and Servicing Act, N.C. Gen. Stat. § 45-90 et seq.; the North Carolina Debt Collection Act, N.C. Gen. Stat. Chapter 75, Article 2; and the Unfair and Deceptive Practices Act, N.C. Gen. Stat. § 75-1.1. Finally, plaintiff Collins asserts state common law claims for negligence, gross negligence, fraud, constructive fraud, breach of contract, and quiet title.

Plaintiff Bryant joins the quiet title claim by virtue of her joint ownership in the property obtained by quitclaim deed after plaintiff Collins purchased the home. Plaintiff Collins seeks relief including compensatory, statutory, and punitive damages. Plaintiffs also seek declaratory judgment

---

[1] The court also addresses herein the status of defendant Julie Patel, pursuant to the court's October 23, 2015, order. Also remaining pending on the docket is plaintiffs' motion to strike affirmative defenses (DE 149). The court previously set forth its reasons for denying such motion in its October 23, 2015, order, although that order terminated only the motion to strike at docket entry 147. For the reasons stated in its October 23, 2015, order, the court DENIES plaintiffs' motion to strike affirmative defenses (DE 149).

that the purchase note is void or unenforceable, and declaratory judgment quieting title; "reasonable attorney fees should they retain an attorney"; costs; and trial by jury. (2nd Am. Compl. at 63).

In April and May, 2015, defendants GBC, PHH, Freddie Mac, Gateway, filed the instant motions to dismiss all claims against them in their entirety.[2] Meanwhile, on August 10, 2015, the FFSI defendants filed an answer, as well as a motion to dismiss for lack of proper service, and, in part, for failure to state a claim upon which relief can be granted. On October 23, 2015, the court denied that part of the FFSI defendants' motion to dismiss for improper service, and held in abeyance that remaining part of the motion to dismiss, pertaining to plaintiff Bryant. The court also directed plaintiffs to show cause why defendant Julie Patel should not be dismissed for failure to effectuate service.

## STATEMENT OF FACTS

The facts alleged in the second amended complaint may be summarized as follows. Plaintiff Collins, who was 79 years old at the time of conduct alleged in the complaint, contacted defendant FFSI on October 16, 2013, expressing interest in obtaining a mortgage loan for a residential property to be purchased by plaintiff Collins at 2117 Lenox St., Jacksonville, North Carolina (hereinafter the "subject property"). On October 17, 2013, FFSI offered plaintiff Collins a conventional loan in the amount of $417,000.00, with a down payment of $133,000.00, an interest rate of 4.125%, an origination fee of $26.50, and a lender credit from FFSI of 1 point or $4,170.00 at closing, with closing to occur in 30 days (hereinafter the "proposed loan"). FFSI informed plaintiff Collins that the lender for the proposed loan was FFSI.

---

[2] Plaintiffs and defendant Flagstar Bank entered a stipulation of dismissal of all claims against Flagstar Bank, on March 9, 2015, and, accordingly, Flagstar Bank is not included in the caption of this order.

FFSI stated that it would "lock in" the interest rate once plaintiff Collins paid for the appraisal. Plaintiff Collins paid for the appraisal on October 17, 2013, and locked in the interest rate at that time. During processing of the loan, FFSI repeatedly requested identical documents and information from plaintiff Collins, and closing did not occur as anticipated on or before November 17, 2013. FFSI informed plaintiff Collins on November 15, 2013, that the lock on the interest rate expired that day and that she would be required to pay an additional $1,563.75 in order to extend the interest rate lock. After plaintiff Collins protested the fee, FFSI agreed to waive the rate lock extension and represented that a loan closing would take place within 15 days.

On November 29, 2013, FFSI charged plaintiff Collins $1,563.75, in order to extend the interest rate lock, without disclosing this charge to plaintiff Collins on a good faith estimate prepared December 3, 2015. On December 10, 2013, FFSI provided plaintiff Collins with a final settlement statement, which included two rate lock extension fees of $1,563.75 each. When plaintiff Collins questioned these charges, FFSI stated that the first rate lock fee would be removed prior to settlement, but the second rate lock fee was required to be assessed at closing. FFSI stated that the proposed loan must proceed to closing by December 13, 2013, on the terms specified, or the proposed loan would be cancelled by FFSI. FFSI stated to plaintiff Collins that the second rate lock extension fee could be refunded to her after closing.

Plaintiff Collins faced a penalty of $35,000.00 on the purchase contract for the subject property if the proposed loan was cancelled at the last minute requiring more than 30 days of additional processing for a new loan. Therefore, plaintiff Collins felt she had no choice but to proceed to closing on the terms set by FFSI, including payment of the second rate lock extension fee of $1,563.75.

4

Loan settlement and closing commenced at 9:30 a.m. on Friday, December 13, 2013. At that time, a "settlement agent" (not named in the complaint) presented plaintiff Collins with a settlement statement, referred to as a "HUD-1" in the complaint. (2nd Am. Compl. ¶ 153). The settlement agent presented plaintiff Collins with closing documents for signature, which plaintiff Collins signed. Around 5:00 p.m. on Friday, December 13, 2013, after closing had completed, plaintiffs examined the HUD-1 in detail, and noticed that there was an error resulting in an overpayment by plaintiff Collins of $5,000.00 that she had paid to the settlement agent during closing. Plaintiffs notified all parties of the error, and plaintiff Collins received a response from the seller's realtor confirming the error. On 4:00 p.m., Monday, December 16, the settlement agent presented corrected documents for plaintiff Collins to sign, without the $5,000.00 overpayment. On December 17, 2013, the deed of trust was registered and the settlement funds were disbursed. All of the settlement documents are dated December 13, 2013.[3]

The settlement documents state that the principal amount on the loan (hereinafter the "subject loan" or "subject Note") is $417,000.00, and that the first payment on the subject loan is due February 1, 2014. The settlement documents state that the lender for the subject loan is defendant FFSI, and that payments are to be made to FFSI. After the subject loan closed, plaintiff Collins asked FFSI to reimburse the rate extension fee, but FFSI refused to do so.

On January 13, 2014, defendant GBC sent to plaintiff Collins a "mortgage loan transfer disclosure notice" (hereinafter the "GBC notice"), which specifies that the subject loan was sold or transferred to GBC on December 13, 2013, and that the new creditor on the mortgage loan is GBC. (2nd Am. Compl. Ex. D). The GBC notice further states that defendant FFSI is the "agent or party

---

[3] Plaintiffs do not attach to the complaint any of the settlement documents or pre-settlement statements or estimates. Therefore, the court draws the description of such documents from the allegations in the complaint.

having authority to act on behalf of the new creditor" as the "mortgage company servicing" the subject loan, "with authority to resolve issues concerning borrower payments on" the subject loan. (2nd Am. Compl. Ex. D).  In addition, the GBC notice states that it does not "otherwise change the address where you send your mortgage loan payments," and "[i]f there is any change in the address for your mortgage loan payments, you will be notified of such change separately and apart from this notice." (2nd Am. Compl. Ex. D).

On January 24, 2014, plaintiff Collins granted by deed all right, title, claim, or interest to the subject property to herself and plaintiff Bryant, jointly.  (2nd Am. Compl. Ex. A).

On February 3, 2014, plaintiff Collins sent a payment coupon with a check of $3,020.99 to FFSI, comprising $2,020.99 for principal and interest, and an additional $1,000.00 to be applied to principal (hereinafter the "February 2014 payment").  FFSI received the payment coupon on February 6, 2014, but did not process the coupon or the check, but rather forwarded it to Flagstar Bank to be returned to plaintiff Collins.

On February 6, 2014, plaintiff Collins received a notice from FFSI stating that the subject loan and servicing rights on the subject loan had been sold and assigned to defendant PHH on January 29, 2014.  Thereafter, in an undated letter, PHH sent to plaintiff Collins a statement about "[w]hat you need to know before making your first mortgage payment" (hereinafter, the "PHH notice").  (2nd Am. Compl. Ex. E).  The PHH notice states: "Your first payment is due on March 1, 2014 and consists of the following:  Principal and Interest $2,018.15."  (Id.).  The PHH notice further states "This estimated payment could change if changes in your loan amount or monthly escrows occur during your loan closing."  (Id.).  The PHH notice directs that payments be made

6

using a first payment coupon specifying payment due March 1, 2014 in the amount of $2,018.15. (Id.).

On February 22, 2014, plaintiff Collins received a letter from Flagstar Bank that it was returning plaintiff Collins's check of $3,020.99 to her because "Check(s) are not payable to Flagstar," and it requested that plaintiff Collins "issue a new check, payable to Flagstar Bank," and also stated that the letter was a debt collection letter from Flagstar Bank. (Am. Compl. ¶199).

On February 24, 2014, plaintiff Collins sent a payment coupon with a check of $3,018.15 to PHH, comprising $2,018.15 for principal and interest due March 1, 2014, and an additional $1,000.00 to be applied to principal. PHH received the payment on February 28, 2014 and applied $2020.99 towards principal and interest designated as due March 1, 2014, while applying the remainder $997.16, as principal designated as due April 1, 2014. (2nd Am. Compl. Ex. G).

In a letter to plaintiff Collins dated February 26, 2014, defendant Freddie Mac claimed to have purchased the subject loan, or claimed that a trust of which Freddie Mac was the trustee purchased the subject loan, on or about February 6, 2014, while PHH remained the servicer on the subject loan.

On February 26, 2014, plaintiffs sent a letter (hereinafter February 26, 2014, letter), "to every party they had received mail from concerning the mortgage loan since December 13, 2013," including defendants FFSI, GBC, and PHH. In their February 26, 2014, letter "Plaintiffs explained that they were receiving mail and requests for mortgage payments from several parties and requested information on how any of the parties was related to the loan." (2nd Am. Compl. ¶ 204). In addition, "Plaintiffs explained they had conflicting notices of servicing transfer as well as a mortgage payment that was returned to them, requesting to know who to send the February payment

to, who to send all future payments to, [and] a written promise there would be no penalties related to the February payment due to the conflicting information received." (Id.) Plaintiffs also requested "a complete statement of account with all credits and debits that occurred on the loan since the date of the loan closing." (Id.) Plaintiffs requested that the February 26, 2014, letter "be treated as a dispute, a [Qualified Written Request], a Notice of Error, and a Request for Information, as applicable." (Id. at ¶ 203).

Defendant GBC responded to plaintiffs through a letter dated March 6, 2014. On March 4, 2014, defendant PHH first acknowledged receipt of plaintiffs' February 26, 2014 letter, and responded to plaintiffs through a letter dated March 17, 2014. Plaintiffs sent additional requests for information to PHH, and PHH sent additional letters to plaintiffs after February 26, 2014. Included with such letters from PHH was a March 5, 2014, statement showing that "no payment was due on the subject loan in February 2014 and therefore the account was not showing any delinquency or late payment and was current." (2nd Am. Compl. ¶ 235; Ex. G).

In the meantime, defendant FFSI first responded to plaintiffs' February 26, 2014, letter through a letter dated March 11, 2014, and through additional letters dated to September 2014, including a "mortgage loan statement" dated September 22, 2014, claiming that a payment was due to FFSI in the amount of $2,020.99, as of February 1, 2014. (2nd Am. Compl. Ex. F).

Further details regarding the alleged facts will be set forth in the discussion below.

## COURT'S DISCUSSION

A.      Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). When the motion asserts the complaint fails to state facts upon which subject matter jurisdiction may be based, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Adams, 697 F.2d at 1219.

B.      Analysis of Claims by Plaintiff Collins

        1.      Claims Against Defendant GBC

                a.      RESPA

Plaintiff Collins claims GBC violated RESPA both in the origination and servicing of the subject loan: (1) by giving or receiving fees or kickbacks, to or from FFSI, in violation of RESPA § 8 (12 U.S.C. § 2607), while acting as the actual lender in the origination of the subject loan; and (2) by failing to provide proper notice of servicing transfer and to respond properly to plaintiff

9

Collins's requests for information regarding the servicing of the subject loan, in violation of RESPA § 6 (12 U.S.C. § 2605).

i.      Loan Origination

Section 8 of RESPA prohibits kickbacks in the referral of real estate settlement services, and it prohibits splitting of charges in settlement services other than for services actually performed. In particular, Section 8(a) provides:

> No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.

12 U.S.C. § 2607(a). "Settlement service," as defined in the statute, includes "any service provided in connection with a real estate settlement," such as "title searches, . . . the preparation of documents, property surveys, the rendering of credit reports or appraisals, . . . services rendered by a real estate agent or broker, the origination of a federally related mortgage loan . . . , and the handling of processing, and closing or settlement." § 2602(3). Section 8(b) provides:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

12 U.S.C. § 2607(b). "Any person or persons who violate the provisions of this section" shall be subject to criminal penalties including imprisonment for not more than one year, and "shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service." 12 U.S.C. § 2607(d).

10

"[E]ach subsection [of Section 8] reaches conduct that the other does not." Freeman v. Quicken Loans, Inc., 132 S.Ct. 2034, 2043 (2012). For example:

> a settlement-service provider who agrees to exchange valuable tickets to a sporting event in return for a referral of business would violate § 2607(a), but not § 2607(b). So too a provider who agrees to pay a monetary referral fee that is not tied in any respect to a charge paid by a particular consumer – for instance, a 'retainer' agreement pursuant to which the provider pays a monthly lump sum in exchange for the recipient's agreement to refer any business that comes his way. By contrast, a settlement-service provider who gives a portion of a charge to another person who has not rendered any services in return would violate § 2607(b), even if an express referral arrangement does not exist or cannot be shown.

Id.

Section 8, however, does not prohibit "the payment to any person of a bona fide salary or compensation or other payment for goods or facilities actually furnished or for services actually performed." Id. § 2607(c)(2). Likewise, Section 8 "does not reach unreasonably high fees," "overcharges," "unearned fees," or even "entirely fictitious fees," paid by a particular consumer to a single settlement provider. Id. at 2040 & 2044. Under Section 8(a), liability is dependent upon payment of a thing of value under an agreement to refer settlement business, and under Section 8(b), liability is dependent upon "a settlement-service provider's splitting of a fee with one or more persons." Id. at 2040 & 2043.

In addition, according to regulations authorized by RESPA, "[a] bona fide transfer of a loan obligation in the secondary market is not covered by RESPA." 12 C.F.R. § 1024.5(b)(7).[4] Whether a transfer constitutes a bona fide transfer is dependent upon "the real source of funding and the real interest of the funding lender." Id. "Mortgage broker transactions that are table-funded are not

---

[4] RESPA grants authority to the Bureau of Consumer Financial Protection to "prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of [RESPA]," 12 U.S.C. § 2617, which regulations have been promulgated at 12 C.F.R. § 1024.1 et seq., also referred to as "Regulation X."

secondary market transactions," where "[t]able funding means a settlement at which a loan is funded by a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds." Id. § 1024.2(b).

Plaintiff Collins's claim against defendant GBC under Section 8 of RESPA fails because she does not allege facts plausibly establishing that defendant GBC gave or accepted a kickback for referral of settlement business, or that defendant GBC split any settlement charge. Plaintiff Collins suggests that defendant FFSI charged certain allegedly improper fees in settling the subject loan, including a second interest rate lock fee of $1,563.75, and other unspecified finance charges and fees charged at settlement. The facts alleged, however, do not permit a reasonable inference that GBC gave or accepted a kickback as part of any such fees, or that it split those fees. Rather, plaintiff alleges that defendant FFSI kept the fees it charged plaintiff Collins. (See 2nd Am. Compl. ¶¶ 115, 188).

Plaintiff Collins nonetheless suggests that defendant GBC should be liable under RESPA because it purchased the subject loan from FFSI as part of a "table-funding" transaction, and it gave or received certain fees as part of that transaction. Plaintiff Collins cites, for example, certain fees contemplated by a "Repurchase Agreement" between defendant FFSI and GBC. (Am. Compl., Ex. B, DE 60-3). The Repurchase Agreement, however, describes a financing mechanism and a secondary market transfer of loans, not a table-funded transaction that would be subject to RESPA. In particular, it provides for financing by defendant GBC of mortgage loans closed by defendant FFSI, followed by sale of such loans to defendant GBC upon closing, coupled with an unconditional obligation for defendant FFSI to repurchase loans if a secondary market sale to an investor does not occur. (See DE 60-3 §§ 1.31-1.34; 1.47; 3.5-3.7; 6.1; 8.1).

Defendant FFSI's repurchase obligation in the Repurchase Agreement is important to the characterization of the transaction as a secondary market financing mechanism rather than a table funded loan settlement. A regulatory opinion attached to plaintiff Collins's response underscores the importance of the repurchase obligation, where it opines:

> So long as the mortgage lender has an unconditional obligation promptly to repurchase the loan if a secondary market sale does not occur, the [United States Department of Housing and Urban Development] will analyze the arrangement in the manner described for repurchase agreements and traditional warehouse lines of credit . . . .

(Response, DE 90-5 at 2 (March 29, 2011 letter from Helen R. Kanovsky, Office of General Counsel, U.S. Department of Housing and Urban Development).

Here, defendant FFSI is required to repurchase the subject loan after 91 days of sale of the loan to defendant GBC, thus giving rise to the structure of the agreement as a "Repurchase Agreement." (See DE 60-3 §6.1 and p. 2). Accordingly, the Repurchase Agreement contemplates a secondary market financing mechanism, rather than solely "a contemporaneous advance of loan funds and an assignment of the loan to the person advancing the funds," as would be required in a table-funded transaction. 12 C.F.R. § 1024.2(b); cf. Moreno v. Summit Mortg. Corp., 364 F.3d 574, 577 (5th Cir.2004) (holding that loan closed by lender in its own name and funded using lender's line of credit with another bank which was sold under pre-existing agreement to third party was a bona fide secondary market transaction under RESPA).

Plaintiff Collins suggests that defendant GBC nonetheless should be held liable under RESPA because it had knowledge of improprieties in the subject loan origination, or because defendant FFSI was acting as its agent for purposes of loan origination. With respect to knowledge of improprieties, however, plaintiff Collins does not allege any facts permitting an inference that

13

defendant GBC had knowledge of improprieties in the subject loan origination. While plaintiff Collins cites to the Repurchase Agreement in support of this proposition, (see Response, DE 90 at 12),[5] the Repurchase Agreement in fact provides to the contrary that defendant FFSI represents that all loan documents are valid, complete, and free from defects. (See DE 60-3 § 2.2).

Plaintiff Collins also fails to allege facts supporting an agency theory of liability. "Two essential elements of an agency relationship are: (1) the authority of the agent to act on behalf of the principal, and (2) the principal's control over the agent." State v. Weaver, 359 N.C. 246, 258 (2005). Plaintiff Collins again points to the Repurchase Agreement as the basis for her agency contention, (see Response, DE 90, at 13), but the Repurchase Agreement sets forth neither authority of defendant FFSI to act on behalf of defendant GBC with respect to loan origination, nor defendant GBC's control over defendant FFSI. Detailed terms and conditions under which loans will be financed and purchased (see, e.g., DE 60-3 §2, 3.1, 3.3), do not in this instance transform an arms length loan market transaction into a principal / agent relationship.

In any event, plaintiff Collins has not alleged any kickbacks or split fees between defendant GBC and the FFSI defendants that were other than "for services actually performed." 12 U.S.C. § 2607(b) & (c)(2). Plaintiff Collins alleges substantial conduct by the FFSI defendants in originating and settling the loan, from initial communications with plaintiff Collins, gathering documentation, providing interest rate locks, completing settlement and participating in correction of settlement documents. (See, e.g., 2nd Am. Compl. ¶¶ 90-163). Plaintiff Collins does not point to any kickbacks or split fees paid to defendant FFSI that were other than for such services performed, and the fact of payment of fees under the Repurchase Agreement is not in itself sufficient to state a

_____

[5] For documents referenced by docket entry number, page numbers specified are those shown when the document is viewed electronically on the court's Case Management / Electronic Case Filing system.

14

violation of Section 8 of RESPA. See Culpepper v. Irwin Mortgage Corp., 491 F.3d 1260, 1273 (11th Cir. 2007) (analyzing whether a "yield spread premium" paid by lender to broker constitutes an illegal payment under RESPA by considering in part whether "the broker performed 'actual services' in the course of arranging the mortgage transaction"). In addition, with respect to the "secret lock" fee of $1,563.75, (2nd Am. Compl. ¶ 139), Plaintiff Collins alleges no facts permitting an inference that such fee was split with defendant GBC. Indeed, plaintiff Collins alleges that defendant FFSI kept allegedly excessive fees for itself. (See 2nd Am. Compl ¶188).

Plaintiff Collins also suggests that defendant GBC's failure to disclose its role in providing lender financing for the subject loan could constitute an independent basis for a violation of RESPA Section 8. One district court in this circuit has held that failing to disclose certain affiliated business arrangements may constitute a "per se" violation of RESPA Section 8(c)(4). See Minter v. Wells Fargo Bank, N.A., 924 F.Supp.2d 627, 631 (D. Md. 2013). The Fourth Circuit, however, has recognized that Section 8(c) sets forth only exemptions from liability, not additional prohibitions, and has not had occasion to decide whether Section 8(c)(4) provides an independent basis for RESPA liability. See Minter v. Wells Fargo Bank, N.A., 762 F.3d 339, 334 n.3 (4th Cir. 2014). Based on the plain language of the statute, Section 8(c) does not provide an independent basis for RESPA liability. Therefore, the court declines to follow the district court in Minter, and holds instead that only Section 8(a) and 8(b) provide a basis for liability in Section 8 of RESPA.

In sum, plaintiff has failed to state a claim against defendant GBC under Section 8 of RESPA based on the origination of the subject loan.

ii.     Loan Servicing

Plaintiff Collins claims GBC violated RESPA by providing, or causing FFSI to provide, inaccurate or ineffective notices of servicing transfer, in violation of RESPA Section 6, 12 U.S.C. § 2605(b) & (c).  Section 6(b) of RESPA provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, sale, or transfer of the servicing of the loan to any other person." Id. § 2605(b)(1).  Section 6(c) of RESPA provides that "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer." Id. § 2605(c)(1).  Section 6 of RESPA provides for an award of "actual damages to the borrower as a result of [any] failure" to comply with any provision of Section 6.  Id. § 2605(f)(1).

"Servicer" is defined by RESPA as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."  Id. § 2605(i)(2). "Servicing" means "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." Id. § 2605(i)(3).

Plaintiff Collins fails to state a claim under Section 6 of RESPA against GBC because plaintiff Collins does not allege facts permitting a plausible inference that GBC was ever the "servicer" of the subject loan.  Plaintiff alleges, for example, that "[t]he settlement documents stated that the payments were to be made to FFSI."  (2nd Am. Compl. ¶ 170).  Further, a January 13, 2014, notice by GBC to plaintiff Collins states that the subject loan was transferred to GBC on December 13, 2013, and that defendant FFSI is "the mortgage company servicing your mortgage loan with

16

authority to resolve issues concerning borrower payments on the loan." (2nd Am. Compl. Ex. D, DE 60-5). The notice makes clear that defendant "GBC will not collect your payment," and that plaintiff Collins was to "refer to [her] original mortgage representative for payment information." Id.

Plaintiff Collins alleges that she received conflicting information on who was entitled to receive payment for the subject loan in February and March 2014. The conflict, however, is between several different servicers, not defendant GBC itself. For example, plaintiff Collins alleges that "[a]t least three (3) different companies were claiming they were entitled to receive payment on this loan in February and March 2014: Flagstar, FFSI as agent of GBC, and PHH." (2nd Am. Compl. ¶ 201). While this allegation is sufficient to create an inference that Flagstar, FFSI, and PHH, may have acted as servicers at some time, for purposes of RESPA Section 6, it is not sufficient to create an inference that GBC was ever acting as servicer.

Plaintiff Collins argues nonetheless that defendant GBC was a servicer because defendant FFSI was acting as its agent, or defendant GBC was a "master servicer." (Response, DE 90, at 15). Plaintiff Collins again points to the Repurchase Agreement as a basis for this argument, but the Repurchase Agreement does not provide for such an agency or master servicer relationship. Rather, it states that "immediately upon Purchaser's purchase of a Loan, Seller shall act as trustee for Purchaser and on Purchaser's behalf to service any and all Purchased Loans and use its best efforts to collect all amounts due and payable under each Purchased Loan as such amounts become due." (DE 60-3, § 7.1). As such, the Repurchase Agreement places on defendant FFSI the duty to act as servicer by collecting amounts due, and it does not impose upon defendant GBC the duty to do so.

17

Where plaintiff Collins does not allege that GBC ever held itself out as servicer, or requested payment to itself as servicer, or otherwise received scheduled payments from plaintiff Collins, GBC is not a servicer under RESPA. See 12 U.S.C. § 2605(i)(3). Plaintiff Collins's assertion of an agency or master servicer relationship is insufficient to transform GBC into a servicer. To hold otherwise would subject all creditors that do not service their own loan to liability under RESPA Section 6, solely because they enlist a servicer to receive payments under a loan, which is a result at odds with the definition of "servicer" in § 2605(i)(2). The statute contemplates creditor liability as servicer only where "the person who makes or holds a loan . . . also services the loan," id. § 2605(i)(2), a circumstance not alleged here.

Accordingly, plaintiff has failed to state a claim against defendant GBC under Section 6 of RESPA based on the servicing of the subject loan.

b.     TILA

Plaintiff Collins claims that GBC violated TILA by failing to disclose properly fees collected and amounts financed in connection with the origination of the subject loan, in violation of 15 U.S.C. §§ 1638, 1639.

TILA, however, imposes requirements upon a "creditor" to make certain disclosures to borrowers, including disclosures of the various costs associated with the loan and of the borrower's right to rescind the transaction under certain circumstances. See, e.g., 15 U.S.C. §§ 1638, 1639. A "creditor," in turn, is defined as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(g) (emphasis added). Plaintiff does not allege that defendant GBC is the person initially payable on the face of the subject loan, but rather that defendant FFSI is so identified. Therefore, plaintiff

18

Collins's claim against GBC under TILA fails as a matter of law.  See Vincent v. The Money Store, 736 F.3d 88, 106 (2d Cir. 2013); Ward v. Sec. Atl. Mortgage Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 569 (E.D.N.C. 2012).

In certain circumstances, a borrower also may bring a civil cause of action under TILA for statutory damages against an assignee of a creditor, under 15 U.S.C. § 1641(a).  "Under § 1641(a), however, only a violation of TILA that is apparent on the face of the instrument is enforceable against an assignee of the creditor."  Ward, 858 F. Supp. 2d at 569.  In this case, plaintiff Collins does not allege any violations of TILA apparent of the face of the instrument.  Indeed, plaintiff Collins states that she was not aware of alleged improprieties in disclosures until "months later." (2nd Am. Compl. ¶ 165).

Plaintiff also claims that defendant GBC is liable under TILA by failing to credit the February payment as of the date it was received, resulting in additional interest charges to the loan, in violation of 15 U.S.C. § 1639f(1).  Section 1639f provides:

> In connection with a consumer credit transaction secured by a consumer's principal dwelling, no servicer shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency . . . .

15 U.S.C. § 1639f(a) (emphasis added).  Plaintiff Collins claim under section 1639f against GBC fails for the same reason as the servicer claims asserted under RESPA: under the facts alleged, defendant GBC was not the servicer of the subject loan at the time of the February payment. See 15 U.S.C. § 1602(cc)(7) (providing that "servicer" has the same meaning as provided in RESPA).

In sum, plaintiff Collins's TILA claim against defendant GBC must be dismissed.

c.  Good Funds Settlement Act

Plaintiff Collins claims that GBC violated the North Carolina Good Funds Settlement Act, N.C. Gen. Stat. § 45A by failing to disclose that defendant FFSI or defendant Dillon were acting as mortgage brokers for GBC acting as a mortgage lender in the origination and processing of the subject loan.  Section 45A-4(b) provides:

> If the settlement agent receives information from the lender as provided in G.S. 45A-5(b) or otherwise has actual knowledge that a mortgage broker or other person acted as a mortgage broker in the origination of the loan, the settlement agent shall place an entry on page 1 of the deed of trust showing the name of the mortgage broker or other person who acted as a mortgage broker in the origination of the loan.

N.C. Gen. Stat. § 45A-4(b).  The referenced section 45A-5(b) provides that: "[t]he lender shall include in the loan closing instructions to the settlement agent the name of the mortgage broker or other person, if any, who acted as a mortgage broker in the origination of the loan."  N.C. Gen. Stat. § 45A-5(b).  In turn, "Mortgage broker" means a person engaged in a subcategory of "mortgage business" defined as:

> For compensation or gain, or in the expectation of compensation or gain, either directly or indirectly, to accept or offer to accept an application for a residential mortgage loan from prospective borrowers, solicit or offer to solicit a residential mortgage loan from prospective borrowers, negotiate the terms or conditions of a residential mortgage loan with prospective borrowers, issue residential mortgage loan commitments or interest rate guarantee agreements to prospective borrowers, or engage in tablefunding of residential mortgage loans, whether any such acts are done through contact by telephone, by electronic means, by mail, or in person with the borrowers or prospective borrowers.

20

N.C. Gen. Stat. § 53-244.030(11) & (19) (emphasis added).[6] "Mortgage lender" means a person

engaged in a second subcategory of "mortgage business" defined as "[t]o make or fund, or offer to

make or fund, or advance funds on residential mortgage loans for compensation or gain, or in the

expectation of compensation or gain." Id. § 53-244.030(11) & (20). "However, the definition does

not include a person who acts as a mortgage lender only in a tablefunding transaction." Id. Under

North Carolina law, "'[t]ablefunding' means a transaction in which a person closes a residential

mortgage loan in its own name but with funds provided by another and in which the loan is assigned

to the mortgage lender actually providing the funds within one business day of the funding of the

loan."

Plaintiff Collins's claim under the Good Faith Settlement Act § 45A-4 fails for two

independent reasons. First, while the next section, § 45A-5, requires "the lender" to include in

instructions to the settlement agent "the name of the mortgage broker or other person . . . who acted

as a mortgage broker," defendant GBC was not the lender for the subject loan. Rather, defendant

GBC was acting in accordance with the Repurchase Agreement, (see 2nd Am. Compl. ¶ 100), which

delineates a transaction in which defendant FFSI is a mortgage lender and defendant GBC is a

purchaser of the subject loan. (DE 60-3 § 3 and p. 2). Accordingly, defendant GBC did not have

a duty to report the name of any person acting as a mortgage broker.

In any event, the Good Funds Settlement Act only provides for liability in the event of actual

damages or loss due to a party's violation of the statute. N.C. Gen. Stat. § 45A-7. Here, any

---

[6] Section 45A-4(b) does not define "mortgage broker," but instead references definitions contained in N.C. Gen. Stat. § 53-243.01, which was repealed in 2009. Nevertheless, § 52-243.01, along with the entirety of Article 19A of Chapter 53 of the N.C. Gen. Statutes was replaced by Article 19B of Chapter 53, which contains the definitions quoted in the text.

violation by defendant GBC of the statute would flow from its failure to disclose its status as a table-funding lender, as that term is defined under North Carolina law, which may be different from its status as a table-funding lender under RESPA. As set forth above, the distinction between a table-funding lender (which plaintiff Collins contends should be disclosed) and a lender in the secondary market who finances the loan transaction through a warehouse funding arrangement (which plaintiff Collins recognizes does not have to be disclosed), is a highly technical distinction subject to formal and informal regulatory interpretations. (See Response, DE 90, at 5-7). Yet, in both instances, a lender provides financing to enable the loan to close. See id. Plaintiff Collins has not alleged any damages resulting from the failure of defendant GBC to disclose its purported status as a table-funding lender, as that term is defined under state law.

Accordingly, plaintiff Collins's clam against defendant GBC under the Good Funds Settlement Act must be dismissed.

### d. Uniform Commercial Code

Plaintiff Collins claims that she is entitled to a discharge or credit of $3020.99 towards the subject loan by defendant GBC, jointly and severally with , defendants PHH, FFSI, and Gateway, on the basis of the uncredited February 2014 payment made by plaintiff Collins to defendant FFSI, in accordance with the Uniform Commercial Code ("UCC"), N.C. Gen. Stat. §§ 25-3-603(a) and 25-3-602(a).

The relevant sections of the UCC provide that "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract." N.C. Gen. Stat. § 25-3-603(a). In addition, "an instrument is paid to the extent payment is made (i) by or on behalf of a

party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument." Id. §
25-3-602.

Plaintiff Collins's claim under the UCC against defendant GBC fails because plaintiff does
not allege facts permitting a plausible inference that she made the February 2014 payment to
defendant GBC or that defendant GBC was "a person entitled to enforce the instrument" at that time.
Id. Rather, plaintiff Collins alleges that she mailed her payment on February 3, 2014, to defendant
FFSI. (2nd Am. Compl. ¶193). In addition, she alleges that she received notification from FFSI on
or about February 6, 2014, that "the Note and Servicing Rights on the Note had allegedly been sold
and assigned to PHH on January 29, 2014." (Id. ¶189).

Furthermore, plaintiff Collins fails to allege facts entitling her to the relief sought under the
UCC. Plaintiff Collins is seeking "a discharge, credit or payment of $3020.99 towards the subject
loan" or a "payment of any interest charged on the payment amount of $3029.99 since February 1,
2014," on the basis of an un-negotiated check that was returned to plaintiff Collins. There is no
basis in the UCC to order defendant GBC to do either, where defendant GBC does not presently own
the subject loan.

In sum, plaintiff Collins's claim under the UCC against defendant GBC must be dismissed.

e.      Mortgage Debt Collection and Servicing Act

Plaintiff Collins claims that defendant GBC failed to discharge or credit $3020.99 properly
towards the subject loan, on the basis of the February 2014 payment made by plaintiff Collins to
defendant FFSI, in violation of N.C. Gen. Stat. § 45-91(2). Plaintiff Collins also claims that GBC
failed to process properly plaintiff Collins's qualified written requests for information, in violation
of N.C. Gen. Stat. § 45-93(1)-(3).

Sections 45-91 and 45-93 impose requirements on a "servicer" in assessing fees, providing notifications, and in responding to borrower requests for information. The term "servicer" has the same definition as in RESPA Section 6, 12 U.S.C. § 2605(i). See N.C. Gen. Stat. § 45-90. As discussed above, plaintiff Collins fails to allege facts permitting a plausible inference that defendant GBC ever was a "servicer" with respect to the subject loan. Therefore, plaintiff Collins's claim under the Mortgage Debt Collection and Servicing Act likewise fails as a matter of law and must be dismissed.

f.      Negligence and Gross Negligence

Plaintiff Collins claims that defendant GBC committed negligence per se by virtue of its violations of RESPA, TILA, UCC and North Carolina Mortgage Debt and Servicing Act. Where these claims fail as a matter of law, plaintiff Collins's negligence per se claim also fails as a matter of law and must be dismissed. Where plaintiff Collins's gross negligence claim against defendant GBC is dependent upon a claim of negligence, it also fails as a matter of law and must be dismissed.

g.      Fraud

Plaintiff Collins claims that defendant GBC, along with all other defendants, committed fraud in making misrepresentations and concealments "as described throughout the complaint," and that as a result "all contracts executed as a result of the fraudulent concealments, misrepresentations and actions of Defendants are void or unenforceable against Plaintiffs." (2nd Am. Compl. ¶ 282).

In order to state a claim for fraud under North Carolina law, a plaintiff must plead with particularity facts showing: "(1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." Forbis v. Neal, 361 N.C. 519, 526-27 (2007).

Plaintiff Collins's claim against defendant GBC fails because she has not alleged a false representation or concealment of a material fact. Plaintiff Collins suggests that defendant GBC made false representations in a letter dated March 6, 2014, which defendant GBC sent to plaintiff Collins in response to her February 26, 2014, request for information. In that letter, defendant GBC allegedly stated that defendant GBC "had provided the funding for the loan, . . . [defendant GBC] purchased the Note 'at the closing' on December 13, 2013, . . . this was a standard practice, and . . . [defendant GBC was] never the servicer of the loan." (2nd Am. Compl. ¶206).

Plaintiff Collins contends that defendant GBC falsely stated that it had "purchased the Note 'at the closing' on December 13, 2013," because "GBC was the lender of the note in a table-funding arrangement, acquiring the note prior to settlement according to the Agreement." (Id.). As discussed previously, however, the Agreement does not delineate a table-funding arrangement, and the sale of the subject loan under the Repurchase Agreement does not take place until the subject loan is executed at settlement. (See DE 60-3 at § 2.2). Thus defendant GBC's statement that it had "purchased the Note 'at the closing'" was not false.

Plaintiff Collins also contends that defendant GBC's statement that it was "never the servicer of the loan" was false, because the Repurchase Agreement states that defendant GBC owns servicing rights. However, as discussed previously, under RESPA, defendant GBC was not the "servicer" under the subject loan because it was never the person responsible for "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan." § 2605(i)(2). Accordingly, defendant GBC's statement that it was never the servicer of the loan was not false.

In sum, because plaintiff Collins has failed to allege a false misrepresentation by defendant GBC, her fraud claim must be dismissed as a matter of law.

h.    Constructive Fraud

Plaintiff Collins claims that defendants Dillon and FFSI committed constructive fraud by violating a fiduciary duty to plaintiff Collins as mortgage brokers acting as agents for an undisclosed principal, defendant GBC, "regarding the subject loan during the time they were performing as mortgage brokers on the subject loan." (2nd Am. Compl. ¶ 285).  As a result, plaintiff Collins claims the "loan is unenforceable."  (2nd Am. Compl. ¶ 289).

"In order to maintain a claim for constructive fraud, plaintiffs must show that they and defendants were in a relation of trust and confidence which led up to and surrounded the consummation of the transaction in which defendant is alleged to have taken advantage of his position of trust to the hurt of plaintiff."  Barger v. McCoy Hillard & Parks, 346 N.C. 650, 666 (1997) (internal quotations omitted). "Constructive fraud differs from actual fraud in that it is based on a confidential relationship rather than a specific misrepresentation." Id. (quotations omitted).

Plaintiff Collins's constructive fraud claim against defendant GBC fails because plaintiff Collins fails to allege any facts that defendant GBC was in a relation of trust and confidence with plaintiff Collins.  Rather, plaintiff Collins asserts that defendants Dillon and FFSI were in a position of trust and confidence on the basis that they acted in capacity of mortgage brokers. (See 2nd Am. Compl. ¶ 285).

Plaintiff Collins argues nonetheless that defendant GBC should be held liable for the conduct of defendants Dillon and FFSI because defendants Dillon and FFSI were acting as agents of defendant GBC.  North Carolina law, however, requires a relationship of trust and confidence between a plaintiff and a defendant to establish a claim of constructive fraud, see Barger, 346 N.C. at 666, and plaintiff Collins alleges no such relationship between plaintiff Collins and defendant

GBC.  In any event, plaintiff has not alleged facts permitting an inference that defendants Dillon and

FFSI were acting as agents of defendant GBC in the origination of the subject loan.  The Repurchase

Agreement, which delineates an arms-length financing and secondary market relationship, belies

such a claim.

i.      Unfair and Deceptive Trade Practices

Plaintiff Collins claims that defendant GBC committed unfair and deceptive trade practices,

along with the FFSI defendants and defendant PHH, by "continu[ing] to misrepresent and conceal

information concerning the subject loan and payments on the subject loan" in a manner not specified

in the claim.  (2nd Am. Compl. ¶293).

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show:

(1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in

or affecting commerce, and (3) the act proximately caused injury to the plaintiff."  Bumpers v. Cmty.

Bank of N. Virginia, 367 N.C. 81, 88 (2013).  An unfair or deceptive trade practices claim

"stemming from an alleged misrepresentation . . . require[s] a plaintiff to demonstrate reliance on

the misrepresentation in order to show the necessary proximate cause."  Id.  In addition, "any

reliance on the allegedly false representations must be reasonable."  Id. at 90 (quotations omitted).

Where plaintiff Collins suggests that defendant GBC should be liable for misrepresentations

made in response to plaintiff's February 26, 2014, request for information, the court rejects the claim

for the reasons stated in discussion of plaintiff Collins's fraud claim against defendant GBC.

j.  Breach of Contract

Plaintiff Collins claims that defendant GBC, along with the other defendants, breached the

terms of the subject Note by failing to accept and/or credit the February 2014 payment sent by

plaintiff Collins to defendant FFSI, and by not applying it to the principal and interest on the subject loan.

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby v. City of Gastonia, 635 F.3d 634, 645 (4th Cir. 2011) (quotations omitted). In addition, an "assignee stands absolutely in the place of his assignor, and it is as if the contract had been originally made with the assignee, upon precisely the same terms as with the original parties." Credigy Receivables, Inc. v. Whittington, 202 N.C.App. 646, 652 (2010); see Kraft Foodservice, Inc. v. Hardee, 340 N.C. 344, 348 (1995).

Here, where defendant GBC is not a party to the subject Note, plaintiff Collins's claim turns on whether defendant GBC was an assignee under the subject Note at the time of the alleged payment. Plaintiff Collins does not allege facts permitting a plausible inference that defendant GBC had any right or interests in the subject Note at the time plaintiff mailed her payment to defendant FFSI on February 3, 2014. (2nd Am. Compl. ¶193). Rather, she alleges that she received notification from FFSI on or about February 6, 2014, that "the Note and Servicing Rights on the Note had allegedly been sold and assigned to PHH on January 29, 2014." (Id. ¶189). No other facts alleged in the complaint permit an inference that defendant GBC continued as assignee of the subject Note, after such sale and assignment of the subject Note to defendant PHH.

Accordingly, plaintiff Collins's breach of contract claim against defendant GBC must be dismissed.

### k. North Carolina Debt Collection Act

Plaintiff Collins claims that defendant GBC is a debt collector as defined in the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50, et seq., and that it violated said statute by

threatening to take action to refer an alleged debt for collection, or misrepresented the nature and amount of such debt.

"'Debt collector' means any person engaging, directly or indirectly, in debt collection from a consumer. . . ." N.C. Gen. Stat. § 75-50(3). "No debt collector shall collect or attempt to collect any debt alleged to be due and owing from a consumer by means of any unfair threat, coercion, or attempt to coerce," or "by use of any unconscionable means." Id. §§ 75-51 & 75-55. "No debt collector shall unreasonably publicize information regarding a consumer's debt." Id. § 75-53. "No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation." Id. § 75-54.

Plaintiff Collins's claim against defendant GBC fails because plaintiff Collins's has not alleged that defendant GBC engaged in any debt collection activity regarding the subject loan. Rather, plaintiff Collins suggests that other defendants and entities mishandled, misapplied, and failed to account properly for plaintiff Collins's February 2014 payment to FFSI. By the time any issues with the crediting of this payment were made, defendant GBC did not have any right or interest in the subject loan and defendant GBC did not assert any right to collect any debt on the subject loan. (See 2nd Am. Compl. ¶¶ 189, 193; Ex. D, DE 60-5).

Therefore, plaintiff Collins's North Carolina Debt Collection Practices Act claim must be dismissed.

> ### l. Quiet Title

Plaintiff Collins asserts a claim based upon quiet title, on the basis that her claim to the subject property is superior to that of defendant GBC and she seeks a declaration that defendant GBC is the current holder of the subject loan. "An action may be brought by any person against

another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims." N.C. Gen. Stat. § 41-10. Where defendant GBC does not claim to be the current holder of the subject loan, (see 2nd Am. Compl. ¶¶ 44, 181; DE 68 at 29), plaintiff Collins's quiet title claim against defendant GBC must be dismissed as moot.

In sum, all of plaintiff Collins's claims against defendant GBC must be dismissed for failure to state a claim upon which relief can be granted.

2.     Claims Against Defendant PHH

a.     RESPA

Plaintiff Collins claims defendant PHH violated RESPA in the servicing of the subject loan by failing to provide proper notice of servicing transfer and to respond properly to plaintiff Collins's requests for information regarding the servicing of the subject loan, in violation of RESPA § 6, 12 U.S.C. § 2605.  Plaintiff Collins also claims PHH violated RESPA by failing to correct errors relating to allocation of payments and licensure as a servicer, in violation of 12 U.S.C. § 2605(k)(1)(C).

Unlike defendant GBC, defendant PHH does not dispute that it is or was a servicer on the subject loan.  Defendant PHH instead seeks to dismiss on other grounds the portion of plaintiff Collins's RESPA claim premised upon failure to respond properly to requests for information.  First, defendant PHH asserts that plaintiffs fail to assert that the subject property is not for "business, commercial, or agricultural purposes."  12 U.S.C. § 2606.  This argument is without merit, as plaintiffs state in their complaint that the subject property is their primary residence.  (2nd Am. Compl. ¶¶ 1, 3).

Second, defendant PHH contends that plaintiff Collins's requests for information did not require any response because they did not "seek information related to the servicing of the loan," and they lacked sufficient detail regarding any alleged errors to require a response, as required under RESPA, 12 U.S.C. § 2605(e). RESPA imposes a duty on a "loan servicer to respond to borrower inquiries." § 2605(e). "If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan," RESPA imposes a duty to acknowledge receipt and make appropriate inquiry or action in response. Id. § 2605(e)(1)(A) & (2) (emphasis added). For purposes of this subsection:

> a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
>
>> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
>>
>> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

Id. § 2605(e)(1)(B) (emphasis added).

In this case, plaintiff Collins has alleged sufficient facts to permit an inference that she sent one or more qualified written requests ("QWR") to defendant PHH. Her February 26, 2014, letter allegedly included identifying information, and specifically "requested to know who to send the February payment to," in light of conflicting information received regarding service transfer. (2nd Am. Compl. ¶ 204). Plaintiff Collins sent a second request for information to defendant PHH on April 22, 2014 (the "April 22, 2014, letter"), which allegedly "contained the same requests as in the" February 26, 2014, letter, and "strongly disputed the balance on the account." (Id. ¶ 236).

31

Accepting these descriptions as true, where the documents are not in the record, the February 26, 2014, letter and the April 22, 2014, letters both constitute a QWR under § 2605(e). In addition, Plaintiff Collins's third letter to defendant PHH on November 4, 2014 (the "November 4, 2014, letter"), requesting information of the identity of the servicer and noticing an error in the account balance, (2nd Am. Compl. ¶239 & Ex. J, DE 60-11), includes a QWR under § 2605(e). Accordingly, defendant PHH's argument that plaintiff Collins failed to allege a QWR is without merit.

Finally, defendant PHH contends that plaintiff Collins failed to allege any pecuniary losses or actual damages. RESPA provides an award of "actual damages to the borrower as a result of the failure" of a servicer to comply with RESPA § 6, 12 U.S.C. § 2605, and it provides for an award of "additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f)(1). Here, plaintiff Collins alleges damages resulting from defendant PHH's failure to respond properly to QWRs, including "incorrect account information remaining on the mortgage loan, additional interest charged on the mortgage loan and continuing to occur, and the cost and expense of repeatedly attempting to correct this information." (2nd Am. Compl. ¶244). Plaintiff Collins also alleges that she ceased to pay additional principal on the loan, causing her additional interest fees that she would not have had otherwise, and plaintiff Collins alleges "mental anguish, sleeplessness, anxiety, stress and worry, as a result of these actions." (2nd Am. Compl. ¶¶ 245-246).

At a minimum, plaintiff Collins's allegation of cost and expense of attempting to correct information constitutes a plausible allegation of actual damages resulting from alleged failure of

defendant PHH to respond properly to plaintiff Collins's QWRs. Therefore, the court rejects defendant PHH's grounds for dismissal asserted in its motion to dismiss.

In its reply brief, defendant PHH asserts, as an additional ground for dismissal of plaintiff Collins's claim related to QWRs under RESPA § 6, that "PHH responded to [the November 4, 2014 letter], sending its package to both the North Carolina Office of the Commissioner of Banks and to Ms. Collins." (DE 99 at 7 (citing 2nd Am. Compl. ¶¶ 242-243, Ex. K)). This argument misses the mark for two reasons. First, it is non-responsive concerning plaintiff Collins's first two QWRs. Second, it does not address whether defendant PHH's response was adequate to meet the duty of response imposed by RESPA. The court leaves for another day resolution of that issue upon a more complete record, including introduction into evidence of the actual response provided by defendant PHH. The court also leaves for another day plaintiff Collins's claim that defendant PHH violated RESPA § 6 by failing to provide proper notices of servicing transfer, and by failing to correct errors relating to allocation of payments and licensure as a servicer.

In sum, defendant PHH's motion to dismiss plaintiff Collins's RESPA claim must be denied.

b.     TILA

Plaintiff Collins claims PHH violated TILA by failing to credit the February payment as of the date it was received, in violation of 15 U.S.C. § 1639f. Defendant PHH argues that the claim must be dismissed because it is not a "creditor" as required for civil action liability under TILA, 15 U.S.C. § 1640(a). Section 1639f provides:

> In connection with a consumer credit transaction secured by a consumer's principal dwelling, no <u>servicer</u> shall fail to credit a payment to the consumer's loan account as of the date of receipt, except when a delay in crediting does not result in any charge to the consumer or in the reporting of negative information to a consumer reporting agency . . . .

15 U.S.C. § 1639f(a) (emphasis added). "Servicer" has the same meaning as provided in RESPA. Id. § 1602(cc)(7).

TILA, however, does not provide a cause of action against servicers who violate its provisions, but rather "creditor[s]" who fail to comply with TILA. Id. § 1640(a). "Creditor" is defined as "the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." 15 U.S.C. § 1602(g) (emphasis added). Plaintiff does not allege that defendant PHH is the person initially payable on the face of the subject loan, but rather that defendant FFSI is so identified. (See 2nd Am. Compl. ¶ 170). Therefore, plaintiff Collins's claim against PHH under TILA fails as a matter of law. See Vincent v. The Money Store, 736 F.3d 88, 106 (2d Cir. 2013); Ward v. Sec. Atl. Mortg. Elec. Registration Sys., Inc., 858 F. Supp. 2d 561, 569 (E.D.N.C. 2012).

In certain circumstances, a borrower may also bring a civil cause of action under TILA for statutory damages against an assignee of a creditor, under 15 U.S.C. § 1641(a). "Under § 1641(a), however, only a violation of TILA that is apparent on the face of the instrument is enforceable against an assignee of the creditor." Ward, 858 F. Supp. 2d at 569. In this case, plaintiff Collins does not allege any violations of TILA apparent of the face of the instrument. Indeed, plaintiff Collins states that she was not aware of alleged improprieties in disclosures until "months later." (2nd Am. Compl. ¶ 165). In addition, plaintiff Collins has not alleged any facts permitting a reasonable inference that flaws at origination of the subject loan described in the complaint were "apparent on the face of the disclosure statement[s]." 15 U.S.C. § 1641(a). Plaintiff Collins's assertions of knowledge of defendant PHH of flaws in origination of the subject loan are not

supported by facts giving rise of a plausible inference of knowledge, and are thus insufficient to sustain the claim. (See, e.g., id. ¶¶ 81, 176-179).

Thus, plaintiff Collins's TILA claim against defendant PHH must be dismissed.

c.      Uniform Commercial Code

Plaintiff Collins claims that she is entitled to a discharge or credit of $3020.99 towards the subject loan by defendant PHH, jointly and severally with defendants GBC, FFSI, and Gateway, on the basis of the February 2014 payment made by plaintiff Collins to defendant FFSI, in accordance with the UCC, N.C. Gen. Stat. §§ 25-3-603(a) and 25-3-602(a).

The UCC provides that "[i]f tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract." N.C. Gen. Stat. § 25-3-603(a). In addition, "an instrument is paid to the extent payment is made (i) by or on behalf of a party obliged to pay the instrument, and (ii) to a person entitled to enforce the instrument." Id. § 25-3-602.

Unlike for defendant GBC, plaintiff Collins alleges facts permitting a plausible inference that defendant PHH was "a person entitled to enforce the instrument" at the time of the alleged payment. Id. Plaintiff Collins alleges that the mailed her payment on February 3, 2014, to defendant FFSI. (2nd Am. Compl. ¶193). In addition, she alleges that she received notification from FFSI on or about February 6, 2014, that "the Note and Servicing Rights on the Note had allegedly been sold and assigned to PHH on January 29, 2014." (Id. ¶189).

Defendant does not address dismissal of plaintiff Collins's UCC claim in its memorandum in support of motion to dismiss, but rather only in a footnote in its reply brief, without citation of legal authority. Where plaintiff Collins's RESPA claim remains, based in part on defendant PHH's

35

alleged errors in addressing plaintiff Collins's February 2014 payment, the court finds it premature to dismiss plaintiff Collins's UCC claim, particularly given the lack of briefing on the claim.

In sum, defendant PHH's motion to dismiss as to plaintiff Collins's claim under the UCC must be denied.

### d. Mortgage Debt Collection and Servicing Act

Plaintiff Collins claims that defendant PHH failed to discharge or credit $3020.99 properly towards the subject loan, on the basis of the February 2014 payment, in violation of N.C. Gen. Stat. § 45-91(2). Plaintiff Collins also claims that defendant PHH failed to process properly plaintiff Collins's qualified written requests for information, in violation of N.C. Gen. Stat. § 45-93(1)-(3). Sections 45-91 and 45-93 impose requirements on a "servicer" in assessing fees, providing notifications, and in responding to borrower requests for information. The term "servicer" has the same definition as in RESPA Section 6, 12 U.S.C. § 2605(i). See N.C. Gen. Stat. § 45-90.

Defendant PHH seeks to dismiss this claim on several grounds. First defendant PHH claims that plaintiffs have not alleged that they provided the required pre-suit notice that must precede a civil action for damages under N.C. Gen. Stat. § 45-94. Under § 45-94, "at least 30 days before a borrower or a borrower's representative institutes a civil action for damages against a servicer for a violation of this Article, the borrower or a borrower's representative shall notify the servicer in writing of any claimed errors or disputes regarding the borrower's home loan that forms the basis of the civil action." N.C. Gen. Sta. § 45-94. Defendant's argument on the present motion to dismiss is without merit where it fails to address Plaintiff Collins's November 3, 2014, letter, which describes several errors and disputes that she was then asserting against defendant PHH. (See DE 60-11).

36

Defendant PHH also seeks dismissal of that portion of plaintiff Collins's claim regarding responses to requests for information. The arguments raised mirror those asserted against plaintiff Collins's RESPA claim, which are unavailing at this stage of the proceedings. Accordingly, defendant PHH's motion to dismiss plaintiff Collins's claim under the Mortgage Debt Collection and Servicing Act must be denied.

e.    Negligence

Plaintiff Collins claims that defendant PHH committed negligence per se by virtue of its violations of RESPA, TILA, UCC and North Carolina Mortgage Debt and Servicing Act. Negligence per se based upon a statutory violation, however, only applies in the context of violations of public safety statutes. "[T]he general rule in North Carolina is that the violation of a public safety statute constitutes negligence per se." Stein v. Asheville City Bd. Of Educ., 360 N.C. 321, 326 (2006) (quoting Byers v. Standard Concrete Products Co., 268 N.C. 518, 521 (1966)). Plaintiff Collins has not alleged a violation of a public safety statute. Nor has plaintiff Collins alleged violation of a common law duty. Therefore her negligence claim must be dismissed.

f.    Fraud

Plaintiff Collins claims that defendant PHH, along with all other defendants, committed fraud in making misrepresentations and concealments "as described throughout the complaint," and that as a result "all contracts executed as a result of the fraudulent concealments, misrepresentations and actions of Defendants are void or unenforceable against Plaintiffs." (2nd Am. Compl. ¶ 282).

In order to state a claim for fraud under North Carolina law, a plaintiff must plead with particularity facts showing: "(1) False representation or concealment of a material fact, (2)

37

reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." <u>Forbis</u>, 361 N.C. at 526-27.

Plaintiff Collins fails to allege facts permitting a plausible inference of fraud. Plaintiff Collins suggests that defendant PHH made a false representation in its initial servicing transfer letter, received by plaintiff Collins on or after January 29, 2014, where it stated that the monthly payment due was $2,018.15, whereas defendant PHH later stated that the monthly payment amount due was $2020.99, a discrepancy of $2.54. (2nd Am. Compl. ¶¶ 178, 180, 190, Ex. E). Plaintiff Collins, however, has not alleged facts permitting a plausible inference that the monthly payment amount initially quoted by defendant PHH was "reasonably calculated to deceive" or was "made with intent to deceive." <u>Forbis</u>, 361 N.C. at 526-27.

Plaintiff Collins also suggests that two account statements dated March 5, 2014, contained false representations or concealments of material fact regarding the February 2014 payment plaintiff Collins sent to defendant FFSI. The two statements are titled "Customer Account Activity Statement." (2nd Am. Compl. Ex. G). The first shows no activity in the year 2013. (<u>Id.</u>). This statement does not provide a plausible basis for a fraud claim as plaintiff does not claim to have made any payments in 2013. Although plaintiff Collins's suggests that the statement conceals information about the loan origination, the statement does not purport to be a source of information about loan origination, but rather "Customer Account Activity." (<u>Id.</u>). Therefore, plaintiff Collins has failed to allege this first statement contained a false statement or concealment, or that it was reasonable calculated to deceive.

The second statement shows transaction activity on the loan account beginning with a payment on February 28, 2014, applied to a "Due Date" of March 1, 2014. (<u>Id.</u>). According to

plaintiff Collins, this is a statement showing that "no payment was due on the subject loan in February 2014 and therefore the account was not showing any delinquency or late payment and was current." (2nd Am. Compl. ¶ 235; Ex. G). Plaintiff Collins suggests that this statement concealed a material fact, namely plaintiff Collins's February 2014 payment to FFSI. Plaintiff Collins, however, herself knew of her February 2014 payment sent to FFSI, therefore plaintiff Collins has failed to allege that this omitted information was "calculated to deceive" or "made with intent to deceive." Forbis, 361 N.C. at 526-27. Moreover, plaintiff Collins describes, at most, an error by defendant PHH in the accounting of payments, which error is in her favor as it shows no payment due on the loan account until March 1, 2014, and no delinquency in the account. (See 2nd Am. Compl. ¶ 235; Ex. G). Such error is actionable, if at all, not through a fraud claim but rather through other claims and remedies available against defendant PHH, in the event of any damage resultant therefrom.

Finally, plaintiff Collins suggests that defendant PHH committed fraud by purchasing the subject Note and servicing rights with knowledge of concealments made in the origination of the loan. As a result, plaintiff asserts, defendant PHH should be held liable for improper actions by other parties in the origination of the subject loan. Plaintiff's claim on the basis of such suggestions fails as a matter of law because plaintiff Collins has not alleged facts giving rise to a plausible inference that defendant PHH had knowledge of any concealments made in the origination of the loan. Plaintiff Collins seeks to draw an inference of knowledge based upon a "close connectedness doctrine, '[w]hen the transferee is so closely connected with the transferor that the transferee may be charged with knowledge of an infirmity in the underlying transaction.'" (Response, DE 92 at 9) (quoting Arcanum Nat'l Bank v. Hessler, 433 N.E.2d 204, 209 (Ohio 1982)). Plaintiff Collins,

however, fails to allege facts, beyond speculation, establishing a close connection between defendant PHH and defendant GBC. Therefore, plaintiff Collins's fraud claim on this basis must be dismissed.

In sum, plaintiff Collins's fraud claim against defendant PHH must be dismiss for failure to state a claim upon which relief can be granted.

### g. Breach of Contract

Plaintiff Collins claims that defendant PHH breached the terms of the subject Note by failing to accept and/or credit the February 2014 payment sent by plaintiff Collins to defendant FFSI, and by not applying it to the principal and interest on the subject loan.

Under North Carolina law, the "elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Crosby, 635 F.3d at 645 (4th Cir. 2011) (quotations omitted). In addition, an "assignee stands absolutely in the place of his assignor, and it is as if the contract had been originally made with the assignee, upon precisely the same terms as with the original parties." Crediigy, 202 N.C.App. at 652; see Kraft Foodservice, Inc., 340 N.C. at 348.

Here, where defendant PHH is not a party to the Note, plaintiff Collins's claim turns on defendant PHH's conduct as an assignee under the Note at the time of the alleged payment. In particular, plaintiff Collins alleges that she received notification from FFSI on or about February 6, 2014, that "the Note and Servicing Rights on the Note had allegedly been sold and assigned to PHH on January 29, 2014." (Id. ¶189). Where plaintiff Collins claims that her February 2014 payment was not credited properly in accordance with the terms of the Note, plaintiff Collins states a breach of contract claim against defendant PHH, who was allegedly an assignee under the Note at the time of the alleged payment.

Accordingly, plaintiff Collins's breach of contract claim against defendant PHH shall be allowed to proceed.

        h.        Unfair and Deceptive Trade Practices

Plaintiff Collins claims that defendant PHH committed unfair and deceptive trade practices by "continu[ing] to misrepresent and conceal information concerning the subject loan and payments on the subject loan" in a manner not specified in the claim. (2nd Am. Compl. ¶293).

"In order to establish a prima facie claim for unfair trade practices, a plaintiff must show: (1) the defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Bumpers, 367 N.C. at 88. An unfair or deceptive trade practices claim "stemming from an alleged misrepresentation . . . require[s] a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." Id. In addition, "any reliance on the allegedly false representations must be reasonable." Id. at 90 (quotations omitted).

Where plaintiff Collins suggests that defendant PHH should be liable for "representations and concealments . . . described throughout th[e] complaint," (2nd Am. Compl. ¶ 291), plaintiff Collins's claim fails for the same reason as her fraud claim. In addition, where plaintiff Collins contends that defendant PHH breached contractual duties as holder of the subject loan, recourse to the North Carolina Unfair and Deceptive Practices Act is not warranted. See Broussard v. Meineke Disc. Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998).

In sum, plaintiff Collins's claim for unfair and deceptive trade practices against defendant PHH must be dismissed as a matter of law.

41

i.  North Carolina Debt Collection Act

Plaintiff Collins claims that defendant PHH is a debt collector as defined in the North Carolina Debt Collection Act, N.C. Gen. Stat. § 75-50, et seq., and violated said statute by threatening to take action to refer an alleged debt for collection, or misrepresented the nature and amount of such debt.

"'Debt collector' means any person engaging, directly or indirectly, in debt collection from a consumer. . . ." N.C. Gen. Stat. § 75-50(3). "No debt collector shall collect or attempt to collect any debt alleged to be due and owing from a consumer by means of any unfair threat, coercion, or attempt to coerce," or "by use of any unconscionable means." Id. §§ 75-51 & 75-55. "No debt collector shall unreasonably publicize information regarding a consumer's debt." Id. § 75-53. "No debt collector shall collect or attempt to collect a debt or obtain information concerning a consumer by any fraudulent, deceptive or misleading representation." Id. § 75-54.

Plaintiff Collins's claim against defendant PHH fails because plaintiff Collins has not alleged that defendant PHH engaged in any debt collection activity regarding the subject loan. Plaintiff Collins contends that by including a statement on each payment coupon that "[t]his is an attempt to collect a debt," (Surreply, DE 131 at 3-4), defendant PHH subjects itself to liability as a debt collector under the North Carolina Debt Collection Act. But, there is no allegation that defendant PHH has ever declared the subject loan in default or claimed that plaintiff Collins missed a payment. Indeed, plaintiff Collins alleges that, according to defendant PHH, "no payment was due on the subject loan in February 2014 and therefore the account was not showing any delinquency or late payment and was current." (2nd Am. Compl. ¶ 235 (emphasis added); see Ex. G).

In addition, to the extent plaintiff Collins asserts that sending a payment coupon constitutes debt collection for purposes of the North Carolina Debt Collection Act, plaintiff Collins has failed to allege that such act of sending a payment coupon constitutes an "unfair threat, coercion, or attempt to coerce," or "use of any unconscionable means," id. §§ 75-51 & 75-55, "unreasonabl[e] public[ation]," id. § 75-53, or a "fraudulent, deceptive or misleading representation." Id. § 75-54.

In sum, plaintiff Collins's claim under the North Carolina Debt Collection Act against defendant PHH must be dismissed for failure to state a claim.

j. Quiet Title

Plaintiff Collins asserts a claim based upon quiet title, on the basis that her claim to the subject property is superior to that of defendant PHH and they seek a declaration that defendant PHH is the current holder of the subject loan. "An action may be brought by any person against another who claims an estate or interest in real property adverse to him for the purpose of determining such adverse claims." N.C. Gen. Stat. § 41-10. Where defendant PHH does not claim to be the current holder of the subject loan, (see 2nd Am. Compl. ¶¶ 44, 181; DE 74 at 18), plaintiffs' quiet title claim against defendant PHH must be dismissed as moot.

k. Punitive Damages

Defendant PHH moves to dismiss plaintiff Collins's claim of punitive damages in the event all other claims are dismissed, and, in the alternative, on the basis that the allegations do not support a claim of punitive damages. Under North Carolina law, "[p]unitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory

43

damages were awarded: (1) Fraud[,] (2) Malice[, or] (3) Willful or wanton conduct."  N.C. Gen. Stat. § 1D-15(a).

In this case, the only claims remaining against defendant PHH are breach of contract, UCC, Mortgage Debt Collection and Servicing Act, and RESPA.  Punitive damages are not allowed for breach of contract, see id. § 1D-15(d), and the remaining statutory claims do not provide for punitive damages. See, e.g., 12 U.S.C. § 2605(f)(1).  In addition, the allegations against defendant PHH do not give rise to an inference of fraud, malice, or willful or wanton conduct.  Therefore, plaintiff Collins's punitive damages claim must be dismissed.

3.     Claims Against Defendant Gateway

Plaintiff Collins asserts claims against defendant Gateway solely on the basis that it is a successor entity to defendant FFSI.  (See 2nd Am. Compl. ¶¶ 19-28; Response DE 86 at 4-12). Defendant Gateway argues that plaintiff has not alleged sufficient facts to proceed on a theory of successor liability.

As a general rule, under North Carolina law, "the purchaser of all or substantially all the assets of a corporation is not liable for the old corporation's debts." G.P. Publications, Inc. v. Quebecor Printing-St. Paul, Inc., 125 N.C. App. 424, 432 (1997) (citing Budd Tire Corp. v. Pierce Tire Co., 90 N.C. App. 684, 689 (1988)).  "However, there exist four well-settled exceptions to this general rule against  successor liability: (1) where there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) where the transfer amounts to a de facto merger of the two corporations; (3) where the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) where the purchasing corporation is a 'mere

continuation' of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers." Id. at 432-33 (quoting Budd Tire Corp., 90 N.C. App. at 689).

Under North Carolina law, "[t]he traditional rule regarding 'mere continuation' is that 'a corporate successor is the continuation of its predecessor if only one corporation remains after the transfer of assets and there is identity of stockholders and directors between the two corporations.'" Id. at 434. Under North Carolina law, courts "consider[] two factors in addition to the issue of continuity of ownership: (1) inadequate consideration for the purchase; and (2) lack of some of the elements of a good faith purchaser for value." Id. (citations omitted).

Under North Carolina law, successor liability is more limited than in the context of certain areas of federal law, such as environmental law, in which "a broadened test of successorship, called the 'substantial continuity' or 'continuity of enterprise' test." Id. This latter approach, arising under "federal common law," "considers a series of factors in determining whether one corporation is the successor to another: (1) retention of the same employees; (2) retention of the same supervisory personnel; (3) retention of the same production facilities in the same location; (4) production of the same product; (5) retention of the same name; (6) continuity of assets; (7) continuity of general business operations; and (8) whether the successor holds itself out as the continuation of the previous enterprise." United States v. Carolina Transformer Co., 978 F.2d 832, 838 (4th Cir. 1992).

Plaintiff Collins alleges the following facts pertinent to successor liability, particularly relevant to a "mere continuation" or "substantial continuity" test:

1.    Defendant FFSI transferred its assets to defendant Gateway in 2014, leaving defendant FFSI without sufficient assets to operate. (2nd Am. Compl. ¶9).

2.    Defendant Gateway is operating at the same physical location, utilizing the same telephone numbers, utilizing the same website

45

addresses, operating the same equipment, and utilizing the same advertising as defendant FFSI.  (Id. ¶20).

3.      Defendant Gateway "has assumed the ordinary business obligations of FFSI."  (Id.).

4.      Defendant FFSI's records and documents that are required to be maintained for three years have been stored with defendant Gateway. (Id. ¶22).

5.      Defendant Gateway is "operating with most of the same loan originators, loan processors, management, supervisor and officers as FFSI, who are doing the same jobs, with the same titles, in the same manner as with FFSI."  (Id. ¶ 21).

6.      Defendant Gateway acquired the assets of FFSI through stock transactions and "provided inadequate consideration for the assets of FFSI."  (Id. ¶23).

7.      Defendant Gateway and defendant FFSI "have shared some of the same shareholders, directors, and officers as a result of the asset transfer."  (Id. ¶24).

Defendant Gateway argues that these allegations do not include enough facts to raise the claim of successor liability above the speculative level, arguing that they constitute no more than a formulaic recitation of the elements of the cause of action.  Contrary to defendant Gateway's argument, however, plaintiff Collins has alleged facts with enough particularity, tailored to the circumstances presented in the asset transfer between defendant FFSI and defendant Gateway, to satisfy the federal pleading standard.

In addition, defendant Gateway suggests that the North Carolina standard for successor liability applies, without discussion of the federal common law standard.  Plaintiff Collins, however, has alleged claims against defendant FFSI under both North Carolina law and federal law.  Where defendant FFSI has not moved to dismiss claims asserted by plaintiff Collins against it, and where a wide variety of claims against defendant FFSI remain in this case at this time, it is premature to

46

engage in detailed analysis of successor liability under the varying claims alleged. Therefore, defendant Gateway's motion to dismiss must be denied.

The court notes, however, that in light of the unique nature of the claims asserted against defendant Gateway in the context of this case, the Federal Rules of Civil Procedure counsel in favor of a bifurcation of proceedings with respect to liability of defendant Gateway, to be considered only after a determination of liability as to defendant FFSI has been made. Bifurcation is appropriate in light of the admonition in the rules that "[t]hey should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding," Fed. R. Civ. P. 1, and in light of the direction that a discovery plan must consider factors such as "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, . . . and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

While the issue of a discovery plan presently is not before the court, the court raises these points preemptively to guide consideration of these issues in going forward with claims now allowed against defendant Gateway.

4.     Claim Against Defendant Freddie Mac

Plaintiff Collins asserts a quiet title claim against defendant Freddie Mac, solely on the basis that Freddie Mac purports to be the current holder of the subject loan. Where plaintiff Collins claims that the subject loan is void due to alleged fraud and disclosure violations by defendant FFSI, (see 2nd Am. Compl. ¶¶ 44, 355; Response, DE 91, at 4-6), and that such claims remain against defendant FFSI, these claims are sufficient to provide a basis for a claim of quiet title. See Kelley

47

v. CitiFinancial Servs., Inc., 205 N.C. App. 426, 430 (2010) ("An invalid deed of trust would constitute an interest in real property adverse to the interest of the property owner.").

Defendant Freddie Mac asserts two arguments in support of dismissal of the quiet title claim against it, both of which are without merit. First, Freddie Mac asserts that "[p]laintiffs do not dispute that a valid lien exists on the property, as evidenced by Ms. Collins' timely payments and ongoing compliance with the terms of the loan." (Reply, DE 100, at 2). Cessation of payments under a mortgage loan, however, is not a pre-requisite for a quiet title claim. See N.C. Gen. Stat. § 41-10.

Second, Freddie Mac asserts that "[o]ther remedies exist to address the alleged issues with the Note." (Reply, DE 100, at 2). The statutory action for quiet title, however, was enacted for the purpose of providing an equitable claim for relief, notwithstanding the availability of a legal remedy based upon the invalidity of a deed. See Newman Mach. Co. v. Newman, 275 N.C. 189, 196 (1969).

Accordingly, neither argument advanced by defendant Freddie Mac provides a basis to dismiss plaintiff Collins's quiet title claim. Thus, defendant Freddie Mac's motion to dismiss plaintiff Collins's quiet title claim must be denied.[7]

C.     Analysis of Plaintiff Bryant

Plaintiff Bryant asserts a quiet title claim against defendants, on the basis of her partial ownership in the subject property arising from a January 2014 quitclaim deed between plaintiff

---

[7] In some claims and allegations in the complaint, plaintiffs refer to defendants collectively, even though under the facts alleged, only certain defendants are parties to documents referenced or allegedly are involved in the conduct referenced. To the extent plaintiffs suggest in this manner that defendant Freddie Mac should be held liable under any other claim asserted in the complaint, such claims against defendant Freddie Mac are DISMISSED.

Collins and plaintiff Bryant. Defendants seek dismissal of plaintiff Bryant's claim on the basis of lack of subject matter jurisdiction.[8]

In contrast to plaintiff Collins, plaintiff Bryant does not have standing to assert a claim as to invalidity of the subject Note or deed of trust, because she is not a party to either. Indeed, plaintiff Bryant concedes that she does not seek damages based on any of the remaining claims asserted by plaintiff Collins, which claims could result in invalidity of the deed of trust. (Response, DE 91, at 6). Absent her own interest to assert invalidity of the deed of trust, her quiet title claim is premature. In the event that plaintiff Collins litigates her claim regarding the invalidity of the lien to a successful resolution, plaintiff Bryant may then be able to assert the fact of the invalidity of the lien as a basis for a quiet title claim. Until then, plaintiff Bryant lacks standing to interject herself into this case, where the only actual controversy in this case lies between plaintiff Collins and defendants.

Plaintiff Bryant suggests that she can overcome this result by alleging "only the elements of the fraud claim that are necessary to support her action to quiet title." (Response, DE 91, at 6). Plaintiff Bryant's assertion of the elements of a fraud claim, however, is entirely derivative of plaintiff Collins's claim, not based on any conduct by defendants against plaintiff Bryant. Without being able to allege any damages due to conduct by defendants, plaintiff Bryant lacks standing to assert a fraud claim or any of the other statutory and common law claims asserted by plaintiff

---

[8] The FFSI defendants, along with defendant GBC and defendant PHH, seek dismissal of plaintiff Bryant for lack of standing. The court previously determined herein above that plaintiff Collins's quiet title claim against defendant GBC and defendant PHH must be dismissed for failure to state a claim. Lack of standing of plaintiff Bryant provides an additional reason for dismissal of her quiet title claim against these defendants, and provides the basis for dismissal of that remaining portion of the motion to dismiss by the FFSI defendants.

Collins. Therefore, plaintiff Bryant's attempt to assert elements of fraud, where only plaintiff Collins has standing to assert such cause of action, is an insufficient basis to support a quiet title claim.

In sum, plaintiff Bryant's quiet title claim must be dismissed for lack of standing.[9]

D.     Status of Defendant Julie Patel

Plaintiffs name defendant Julie Patel as a defendant in this case. Plaintiffs, however, have not filed proof of service as to defendant Julie Patel, and the time for service of defendant Julie Patel has passed. Therefore, pursuant to Federal Rule of Civil Procedure 4(m), in its October 23, 2015, order, the court directed plaintiffs to show cause within 21 days of the date of that order why defendant Julie Patel should not be dismissed for failure to effectuate service. Plaintiffs did not respond to show cause. Absent showing of good cause, the court DISMISSES the action without prejudice against defendant Julie Patel for failure to effectuate service.

## CONCLUSION

Based on the foregoing, the court hereby orders as follows:

1.     Defendant GBC's motion to dismiss (DE 67) is GRANTED, and all claims against defendant GBC are DISMISSED.

2.     Defendant PHH's motion to dismiss (DE 73) is GRANTED IN PART and DENIED IN PART, and the following claims asserted by plaintiff Collins are allowed to proceed against defendant PHH:

     a. RESPA ("Count XI")

     b. UCC ("Count II")

---

[9] In some claims and allegations in the complaint, plaintiffs refer to themselves together, even though under the facts alleged only certain defendants and plaintiff Collins are parties to documents referenced, or only plaintiff Collins is the person to whom a communication is directed. To the extent plaintiffs suggest in this manner that plaintiff Bryant has standing to assert any claim other than quiet title, such claims also are DISMISSED for lack of standing.

    c.  Mortgage Debt Collection and Servicing Act ("Count III")

    d.  Breach of contract ("Count IX")

All other claims against defendant PHH are DISMISSED.

3.    Defendant Freddie Mac's motion to dismiss (DE 76) is GRANTED IN PART and DENIED IN PART, and plaintiff Collins's quiet title claim ("Count XIV") against defendant Freddie Mac is allowed to proceed, whereas plaintiff Bryant's quiet title claim is DISMISSED for lack of standing.

4.    Defendant Gateway's motion to dismiss (DE 80) is DENIED, and plaintiff Collins's claims against defendant Gateway are allowed to proceed premised only on liability on the part of defendant FFSI, in accordance with the limitations set forth herein.

5.    That portion of the FFSI defendants' motion to dismiss (DE 121) previously held in abeyance is GRANTED and plaintiff Bryant is DISMISSED for lack of standing.

6.    Plaintiffs' motion to strike affirmative defenses (DE 149) is DENIED.

7.    Pursuant to the court's October 23, 2015, order, defendant Julie Patel is DISMISSED for failure to effectuate service.

An initial order regarding planning and scheduling will follow.

    SO ORDERED, this the 10th day of February, 2016.

LOUISE W. FLANAGAN
United States District Judge